J-S23030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.N.Z., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 81 MDA 2022 |

Appeal from the Dispositional Order Entered November 5, 2021
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s):  CP-28-JV-0000055-2021

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED OCTOBER 14, 2022**

K.N.Z. appeals from the dispositional order entered after she was adjudicated delinquent. She argues the weight of the evidence did not support the adjudication of delinquency. We affirm.

The juvenile court offered the following summary of the underlying facts.

> On August 7, 2020, Trooper Travis Piper was called to the home of R.C.F. (D.O.B. xx/xx/05) ("hereinafter Minor Child") by her mother after the Minor Child disclosed that she had been sexually assaulted by [K.N.Z.] approximately five years prior.
>
> On August 18, 2020, Minor Child was interviewed by Forensic Interviewer Alexa Stouffer at Over the Rainbow, an advocacy center for children located in Franklin County. During the interview, Minor Child stated that the incidents took place while riding on the school bus during her 4th grade year.

---

[*] Retired Senior Judge assigned to the Superior Court.

Minor Child stated that during these incidents, [K.N.Z.] asked Minor Child to sit with her towards the back of the bus. Minor Child moved seats and [K.N.Z.] used several backpacks as a barrier to obscure the view of other students. [K.N.Z.] and Minor Child sat on the floor of the bus and [K.N.Z.] would have Minor Child pull her pants and underwear down. [K.N.Z.] then digitally penetrated Minor Child's vagina and anus. These incidents were reported by Minor Child to have occurred almost daily during the morning and evening commute for a four month span.

Juvenile Court Opinion, 3/22/22, at 2-3.

At an adjudicatory hearing, the Commonwealth presented the testimony of Minor Child, who was 15 years old at the time. She described the initial incident thusly:

I remember the first day that it happened we were sitting on the bus ride home, and it was just – everyone was talking. I remember at the time I was just still very like – like very closed off to myself, so I wasn't really talking to many people, like a lot of the other kids were. I was concentrating listening to music and everything. [K.N.Z.] asked me to come back and sit with her which normally you don't really get up and switch seats and everything, but she was just one seat behind me so I got up and I went back and I sat with her, and she took my backpack and her backpack and normally just another kid's like when it continued on, and she would like make like a backpack wall, and then we would get on the floor and then she would take my pants off and my underwear off, and she would put her fingers inside of my butt, inside of my vagina. Eventually later on that happened, but like inside my vagina didn't happen until later on like it went on for longer.

N.T., 7/16/21, at 9-10.

Minor Child identified the school bus on which the assaults took place as the 904 bus. *Id.* at 8, 18. She testified the bus was "pretty loud" and "rumbustious," and that the driver "was pretty laid back for the most part . . . [i]t wasn't too many rules like many other bus drivers have. It was pretty

like chill. You could do almost like anything." *Id.* at 8-9. She stated K.N.Z. would borrow a backpack from a nearby friend and use their three backpacks to make a wall. *Id.* at 25-26. K.N.Z. would place two of the backpacks on the ground, and one on top of the seat. *Id.* at 25. Minor Child and K.N.Z. would sit on the ground, facing the aisle, with Minor Child closer to the aisle. *Id.* at 12, 27. K.N.Z. would pull down Minor Child's pants and underwear but leave them around her ankles so she could pull them up quickly when they got close to the bus stop. *Id.* at 12. Minor Child testified that there was nothing covering the two children, and the area underneath the seats was "open," with the seats propped up by legs. *Id.* at 27. She stated that her ride to and from school was about 10 to 15 minutes each day, and no one ever looked over the seat to see what they were doing. *Id.* at 9, 26-27. Minor Child testified that she did not seek help because she did not understand what was happening until she learned about sexual assault in seventh grade. *Id.* at 14-16, 32-33.

Minor Child testified that she did not know K.N.Z. personally but remembered her first name and face, located her in the yearbook at the time of the assaults, and had "no doubt" that K.N.Z. was the person who assaulted her. *Id.* at 17, 21. She also stated that K.N.Z. was one of the louder children on the bus. *Id.* at 23-24.

Regarding their location on the bus, Minor Child testified that she and K.N.Z. "were the older ones so we sat at the very like back of the bus." *Id.* at 11. She stated K.N.Z. sat in the last seat, and Minor Child sat directly in front of her. *Id.* at 11, 24-25. The Commonwealth introduced a seating chart for

the 904 bus during the 2015-2016 school year. N.T. at 34; Commonwealth's Exh.1. It indicated Minor Child was in fourth grade at the time, and K.N.Z was in fifth grade. N.T. at 34; Commonwealth's Exh.1. It showed Minor Child's assigned seat was four rows from the back, with an empty space behind her, but with a handful of other children sitting further back. N.T. at 39. The seating chart also showed K.N.Z.'s seat was three rows from the front, and on the other side of the aisle. *Id.* at 36-38. Minor Child testified that she had never seen the seating chart before, and while she believed there were assigned seats, they were not strictly enforced. *Id.* at 25, 34, 40.

Regarding the date, Minor Child testified that the events happened while she was in fourth grade, which she believed was the 2015-2016 school year. *Id.* at 7, 18, 33. She also stated that the assaults took place during the year she moved and stopped when she moved and switched buses. *Id.* at 10, 15, 33. She stated the assaults started late in the year, when it started to get cold, occurred every day for a period of three to four months, and stopped in the middle of the school year, after she moved. *Id.* at 19-20.

On cross-examination, K.N.Z. introduced an e-mail from the Supervisor of Transportation stating that Minor Child moved in December of the 2016-2017 school year, when she was in fifth grade. *Id.* at 21-23, 88; Defense Exh. 2. The e-mail stated that that year, Minor Child switched from the 904 bus to the 608 bus, and K.N.Z., who was in sixth grade, rode the 413 bus all year. N.T. at 22-23; Defense Exh. 2. Minor Child reaffirmed that the assaults happened on the 904 bus, during her fourth-grade year, and that she believed

this was the same year she had moved and changed buses. She agreed that either she must be wrong about the year she switched buses "or this record from the school is just wrong." N.T. at 22.

The Commonwealth also presented the testimony of Minor Child's mother, who testified regarding how Minor Child disclosed the incidents to her family. *Id.* at 42-43. Mother also said that they moved over Christmas break when K.N.Z. was in fourth grade, and that she rode the 904 bus until the move. *Id.* at 44-45. According to Minor Child's mother, Minor Child did not change buses at any other time. *Id.* at 46.

K.N.Z. called Acamie Wilt, who drove the 904 bus during the 2015-2016 school year. Wilt testified that she drives 20 to 30 children at one time. *Id.* at 49. She said that she requires the children to stay in their assigned seats and maintains a seating chart pursuant to state law. *Id.* at 49-50. She allows the children to choose their seats the first week of the school year. *Id.* at 51-52.

Wilt testified that K.N.Z. was "quiet" and "one of her good ones." *Id.* at 51. She stated K.N.Z. "sat up close to [her] the whole time," two to three rows behind her. *Id.* She testified that Minor Child was also quiet and sat "towards the back." *Id.* at 52. Wilt testified that she does not recall the two children ever sitting together. *Id.* at 52, 66-67. Defense counsel showed Wilt the seating chart, which Wilt testified she had created, and Wilt stated that it showed there were several children who sat further back in the bus than Minor Child. *Id.* at 53-54. She also testified that although there were 56 children

listed on the chart, she stated, "You have to put everyone on there but a lot of times half of them don't ride." *Id.* at 69.

Wilt testified that she could see to the back of the bus, and "could tell if I was missing a head or something back there. If they were laying down[,] they were told to sit up." *Id.* at 56. According to Wilt, there was no privacy on the bus. *Id.* at 57. Wilt testified that she would notice if someone built a backpack wall or was sitting on the floor. *Id.* Wilt also testified that other children would tell her if anyone was sitting on the floor. *Id.* at 58. She would purposefully station children in the back of the bus to "tell [her] everything that goes on." *Id.* However, Wilt also testified that "all of [her] bad kids" sit in the back of the bus, "because I can't see and hear them." *Id.* at 65.

K.N.Z. introduced a copy of the bus's morning route. *Id.* at 59; Defense Exh. 1. Wilt testified that she would pick Minor Child up around 8:38 A.M. and would arrive at school around 8:40 A.M. N.T. at 60. She was unable to unload the children until 8:45 A.M., and would walk down the aisle and interact with the children while waiting to unload. *Id.* at 60-61. Wilt testified it would be about 10 minutes on the afternoon commute until she dropped off K.N.Z. *Id.* at 73.

K.N.Z. also testified. She stated she rode the 904 bus when she was in fifth grade, and that she sat towards the front because the back of the bus was loud and she did not like loud people. *Id.* at 76-77, 79. She described herself as a quiet person. *Id.* at 76. She stated the seating chart introduced by the Commonwealth was correct and that Wilt enforced it. *Id.* at 78-79, 81.

She confirmed that on the route home, she would disembark first, and that her stop was approximately 10 minutes from the school. *Id.* at 83, 85. K.N.Z stated that the next year, when she was in sixth grade, she rode the 413 bus. *Id.* at 80. She denied the allegations of assault. *Id.* at 79-80.

The court found that if K.N.Z. had been an adult, her actions would have constituted the crimes of aggravated indecent assault, indecent assault of a person less than 13 years of age, and harassment.[1] The court adjudicated K.N.Z. delinquent and placed her on probation. The court ordered her to pay court costs, perform 10 hours of community service, and complete a prevention, treatment, and aftercare program.

K.N.Z. filed a post-dispositional motion challenging the weight of the evidence. The court denied the motion, and K.N.Z. appealed. K.N.Z. asks this Court to decide whether the trial court erred "by finding that the verdicts were not against the weight of the evidence?" K.N.Z.'s Br. at 4.

K.N.Z. argues the Minor Child's testimony was not credible. First, she argues that Minor Child "consistently and confidently" testified that the assaults happened during the year she switched buses. K.N.Z.'s Br. at 9; *see also id.* at 10 ("[t]he change in buses was a significant part of the accuser's memory of the alleged acts and cannot be ignored"). However, K.N.Z. argues the letter from the Supervisor of Transportation proves that the year Minor

---

[1] 18 Pa.C.S.A. §§ 3125(a)(7), 3126(a)(7), and 2709(a)(1), respectively.

Child changed buses was during the 2016-2017 school year, and that K.N.Z. rode a different bus than Minor Child that year.

K.N.Z. also argues Minor Child testified that K.N.Z sat in the last seat on the bus, and Minor Child sat directly in front of her. However, she asserts, the seating chart introduced by the Commonwealth, her testimony, and Wilt's testimony, all established that she sat closer to the front, while Minor Child sat near the back.

Third, K.N.Z. argues that while Minor Child testified that K.N.Z. was "loud," the bus driver testified that K.N.Z. was "quiet" and "one of [her] good ones." *Id.* at 12 (quoting N.T. at 23-24, 51). K.N.Z. also testified that she was not loud on the bus and did not like loud people. *Id.* at 13. K.N.Z. argues, "[t]he differences in description are so stark that it leads one to wonder whether there was a mistaken identification of [K.N.Z.]." *Id.*

Finally, K.N.Z. argues that "the logistics of performing such acts for the duration of time alleged and in the environment of the school bus without anyone else witnessing and reporting such behavior lead one to find the verdicts shocking to one's sense of justice[.]" *Id.* K.N.Z. points out that the testimony showed that the two children were on the bus together for approximately 10 minutes during the evening commute, and even less time in the morning. K.N.Z. argues that even if there was enough time to perform the alleged acts, it is unlikely that no one would have observed the assaults. She stresses that although Minor Child testified K.N.Z. shielded them with a wall of backpacks, they did not cover themselves with anything. K.N.Z. also

points out that Wilt testified she could see the children's heads over the seats or if any children were sitting on the floor, and that there was no privacy on the bus.

A juvenile court should reverse an adjudication of delinquency when it is "so contrary to the evidence as to shock one's sense of justice and the award of a new [hearing] is imperative so that right may be given another opportunity to prevail." *In re J.B.*, 106 A.3d 76, 95 (Pa. 2014) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). The juvenile court has discretion over the weight claim in the first instance, and we review its decision for an abuse of that discretion. *Id.* The denial of a weight claim is the least assailable of a juvenile court's rulings, as conflicts in the evidence and credibility determinations are to be resolved by the court. *In re J.M.*, 89 A.3d 688, 692 (Pa.Super. 2014).

The juvenile court rejected K.N.Z.'s weight claim. It found Minor Child's testimony to be credible and consistent. Trial Ct. Op. at 7. The court observed Minor Child did not waiver in her testimony that the events occurred during her fourth-grade year and on the 904 bus. *Id.* at 4-5, 7. The court also observed that the morning bus route and seating chart both confirmed the two children rode the 904 bus when Minor Child was in fourth grade, during the 2015-2016 school year. *Id.* at 6. The court acknowledged that the e-mail from the Transportation Supervisor conflicted with Minor Child's testimony that she moved and switched buses during her fourth-grade year. It conceded that the e-mail affords some support for K.N.Z.'s claim that the assaults could

not have occurred during Minor Child's fifth-grade year—the year she did move and switch buses—because K.N.Z. did not ride the 904 bus that year. *Id.* at 6-7. However, the court stated it did "not give [the e-mail] greater weight than the other exhibits or the consistent testimony of the Minor Child" and the conflict "did not undermine her otherwise credible and consistent testimony." *Id.* at 7. The court concluded that considering all of the exhibits and testimony, the adjudication of delinquency was not "so contrary to the evidence as to shock one's sense of justice." *Id.*

We perceive no abuse of discretion. The e-mail from the Supervisor of Transportation, for which no foundation was laid, was but one piece of evidence for consideration by the court. And, even assuming its contents are true, it proves only that Minor Child was incorrect about which school year she switched buses—it does not disprove that K.N.Z. had the opportunity to commit the acts during the previous year, when the Minor Child was in fourth grade and the two children rode the 904 bus together. We note that Minor Child's mother also testified that Minor Child had moved and changed buses during her fourth-grade year, in contradiction with the e-mail. The resolution of this conflict was squarely before the juvenile court as fact-finder, and on this record, we will not disturb its ruling. *In re J.M.*, 89 A.3d at 692.

We similarly find no merit to K.N.Z.'s other attacks on the weight of the evidence. The court was free to disregard any evidence that conflicted with Minor Child's testimony regarding the place of her seat on the bus. It was not required to believe Wilt's testimony regarding how well she performed her job

duties or that she enforced the seating chart she created. The court was also permitted to rely on Minor Child's identification of K.N.Z., and not defense testimony as to which child was perceived or self-identified as "loud" or "quiet." Nor was the court required to accept Wilt's testimony that she would have seen the assaults while driving the bus, given her testimony that her "bad" kids would sit in the back of the bus to evade her observation. The court took Minor Child's testimony as credible, and her testimony established the means by which the assaults took place undetected. The conflicts in the evidence do not render the juvenile court's disposition of K.N.Z.'s weight claim an abuse of discretion.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2022